UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COEUR, INC.,

            Plaintiff,

      v.

CHRIS WYGAL and ANTMED
CORPORATION,

            Defendants.
_____

**DECISION AND ORDER**

6:20-CV-06473 EAW

## INTRODUCTION

Plaintiff Couer, Inc. ("Plaintiff" or "Couer") asserts claims of breach of contract, misappropriation of confidential information and trade secrets, and breach of fiduciary duty against defendant Chris Wygal ("Wygal") and claims of tortious interference with contract and misappropriation of confidential information and trade secrets against defendant Antmed Corporation ("Antmed").[1] (Dkt. 9). Currently pending before the Court are motions by Wygal and Antmed to dismiss the amended complaint—the operative pleading in this matter—pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) (Dkt. 62; Dkt. 63) and a motion by Antmed to stay discovery (Dkt. 73). For the reasons set forth below, the Court grants in part and denies in part Wygal's motion dismiss, denies Antmed's motion to dismiss, and denies Antmed's motion to stay discovery as moot.

---

[1]     Wygal and Antmed are collectively referred to herein as "Defendants."

- 1 -

## BACKGROUND

**I.     Factual Background**

The following facts are taken from the amended complaint. The Court treats Plaintiff's allegations as true for purposes of the instant motion except that, as discussed more fully below, the Court has considered Defendants' factual submissions in connection with their Rule 12(b)(1) motions.

Wygal is a former employee of Plaintiff. (Dkt. 9 at ¶ 2). The duration of Wygal's employment is disputed, and forms the basis for Defendants' Rule 12(b)(1) motions. Plaintiff alleges in the amended complaint that Wygal worked for Plaintiff from December 2007 until his resignation on March 18, 2020, pursuant to the terms and conditions of an Employee Non-Disclosure, Non-Solicitation, Invention and Technology Use Agreement (the "Employment Agreement"). (*Id.*). However, Wygal contends that his employment with Plaintiff ended in 2012, at which time he became employed by Illinois Tool Works, Inc. ("ITW"), Plaintiff's parent corporation. (Dkt. 62-2 at ¶ 3). Wygal has submitted documentary evidence in support of his contention, including evidence that his earnings statements and W-2 forms were issued by ITW after 2012. (*Id.* at ¶¶ 7-8, 10; Dkt. 62-3 at 2; Dkt. 62-4 at 2). Wygal has further submitted a sworn declaration indicating that after 2012, his compensation was solely paid and controlled by ITW, he used an ITW email address for work (and no longer had a Couer email address), and he used an ITW network or database for purposes of his employment. (Dkt. 62-2 at ¶¶ 4, 9). In addition, Wygal has submitted a sworn declaration from his former supervisor, Samuel Thomas, in which Mr.

Thomas states under penalty of perjury that his employment with Couer ended in 2012 and that he was thereafter employed by ITW. (Dkt. 71-3 at ¶¶ 3-7).

Wygal's Employment Agreement with Plaintiff contained the following restrictive covenants: (1) a two-year post-termination restriction on the use, disclosure, or dissemination of Plaintiff's confidential information; (2) an ongoing post-termination restriction on the use, disclosure, or dissemination of Plaintiff's trade secrets; and (3) a two-year post-termination restriction on solicitation of Plaintiff's customers. (Dkt. 9 at ¶¶ 3, 17-22). Wygal also agreed to comply with Plaintiff's Principles of Conduct, which prohibited him from engaging in conflicts of interest, misusing Plaintiff's assets, or failing to protect Plaintiff's confidential information. (*Id*. at ¶ 4).

In the days leading up to his resignation on March 18, 2020, Wygal allegedly emailed himself confidential and proprietary information and trade secrets belonging to Plaintiff, including the following: (1) "[a] detailed master file of clients and distributors he had serviced for Couer"; (2) "[d]etailed pricing information regarding Couer's products"; (3) "[c]lient inquiries and information about one or more expiring contracts with Couer"; and (4) "[s]creenshots of documents containing Couer's client contact information." (*Id*. at ¶¶ 5, 38-42). Defendants then used this information to "directly or indirectly solicit Couer's clients to move their accounts to Antmed." (*Id*. at ¶ 6). "Due to Defendants' acts, a significant volume of Couer's clients and distributors transferred their . . . business to Antmed," costing Plaintiff "several million dollars in annual revenue." (*Id*. at ¶ 48).

## II. Procedural Background

Plaintiff commenced the instant action on July 8, 2020. (Dkt. 1). Plaintiff filed the amended complaint on July 9, 2020. (Dkt. 9). On January 21, 2021, the Court entered a Text Order extending Defendants' deadline to answer or otherwise respond to the amended complaint to February 5, 2021. (Dkt. 60). Defendants filed their motions to dismiss on February 5, 2021. (Dkt. 62; Dkt. 63). Plaintiff filed its response on March 8, 2021 (Dkt. 70), and Defendants filed their replies on March 15, 2021 (Dkt. 71; Dkt. 72).

Antmed filed its motion to stay discovery on May 31, 2021. (Dkt. 73). Plaintiff filed its opposition on June 22, 2021 (Dkt. 75), and Antmed filed its reply on June 29, 2021 (Dkt. 76).

## DISCUSSION

### I. Defendants' Rule 12(b)(1) Motions

As noted above, Defendants seek dismissal of this action under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. "Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and alteration omitted). Accordingly, the Court considers the Rule 12(b)(1) challenges first.

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). Here, Defendants argue that Plaintiff lacks standing to assert the claims presented by this lawsuit and that the Court

accordingly lacks subject matter jurisdiction. "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.' '[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alteration in original) (internal citations omitted). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kearns v. Cuomo*, 981 F. 3d 200, 207 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547 (2016)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Where standing is challenged on the basis of the pleadings, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver*, 621 F.3d at 225 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). Thus, when a Rule 12(b)(1) motion is facial (based solely on the pleadings), a plaintiff has no evidentiary burden and the "task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original) (citation omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017)

(when a standing challenge is facial, a plaintiff has no evidentiary burden, "for both parties can be said to rely solely on the facts as alleged" in the complaint); *John*, 858 F.3d at 736 (where a defendant "mounts only a 'facial' challenge" to a plaintiff's allegations of standing, the plaintiff "bears no evidentiary burden at the pleading stage").

On the other hand, if a defendant makes a fact-based challenge under Rule 12(b)(1), by proffering evidence beyond the pleadings, a plaintiff must come forward in opposition to such a motion "with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (citation omitted). But a plaintiff is entitled to rely on the allegations in the pleading if the evidence proffered by the defendant "is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id*. It is only where the "extrinsic evidence presented by the defendant is material and controverted, [that] the district court will need to make findings of fact in aid of its decision as to standing." *Id.*; *see Aikens v. Portfolio Recovery Assocs., LLC*, 716 F. App'x 37, 39 n.2 (2d Cir. 2017) (even if a Rule 12(b)(1) motion is fact-based, it is only necessary to make factual findings if the evidence is disputed—in other words, where the extrinsic evidence offered by the moving party contradicts pertinent allegations in the complaint or where the opposing party challenges the "authenticity or the factual interpretation" of the extrinsic evidence).

Here, Defendants have made a fact-based challenge to Plaintiff's standing. In particular, they contend that because Wygal was employed by ITW and not Couer at the time of his alleged misconduct, the claims asserted in this litigation belong to ITW, and

- 6 -

standing is therefore lacking. (*See* Dkt. 62-5 at 15[2]). Before proceeding to the merits of this argument, the Court addresses certain procedural matters.

First, the Court notes that Plaintiff has misapprehended its burden in connection with the instant motion. Plaintiff relies solely on its allegations set forth in the amended complaint, and has presented no evidence to the Court to contradict Wygal's assertion that he became an employee of ITW in 2012. Wygal has presented evidence that contradicts Plaintiff's allegations regarding the duration of his employment by Plaintiff and, as discussed further below, those allegations are critical to any conclusion that standing exists as to one of Plaintiff's claims. Thus, it was incumbent on Plaintiff to "come forward with evidence of [its] own to controvert that presented by" Defendants. *Carter*, 822 F.3d at 57. Plaintiff's failure to submit any such evidence has left Wygal's representation that his employment with Couer terminated in 2012 unrebutted, and the Court thus resolves this factual dispute in Defendants' favor for purposes of the Rule 12(b)(1) motions. *See id*. ("If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing.").

Second, Plaintiff repeatedly asserts that discovery will bear out its factual contentions regarding the circumstances under which ITW began issuing Wygal's earning statements and W-2s. (*See, e.g.,* Dkt. 70 at 7 ("Discovery will confirm that, in 2013, ITW purchased Couer through a stock-purchase agreement. ITW assumed responsibility for

---

[2]   Antmed has adopted in whole the arguments made by Wygal in support of his motion to dismiss for lack of standing. (*See* Dkt. 63-2 at 2). The Court accordingly cites solely to Wygal's moving papers in considering the standing issue, for ease of reference.

Coeur's payroll management, administration, and reporting as reflected on the paystubs and IRS W-2 forms that Defendants cite."), 8 ("Under applicable law, Couer's exercise of control established Couer's continuing role as Wygal's employer.  Discovery will confirm these facts and, at a bare minimum, Defendants' motions are wholly premature."), 9 ("Couer remains a going concern because, as will be established through discovery, ITW's purchase of Coeur was via a stock-purchase agreement (not an asset purchase agreement)."), 10 ("In all respects, the Amended Complaint alleges and discovery will confirm that Wygal exclusively took direction from, reported to, and provided his services to his employer Couer—not ITW.")).  However, Plaintiff has neither discussed nor satisfied the standard for establishing that jurisdictional discovery is warranted in this matter.  In particular, the facts that Plaintiff claims could be established via discovery are facts related to its own corporate structure, and evidence regarding the same should be fully available to it.  *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (explaining that jurisdictional discovery is generally warranted "where the facts, for which discovery is sought, <u>are peculiarly within the knowledge of the opposing party</u>" (emphasis added)).  Plaintiff's opportunity to submit evidence regarding its factual contentions was in opposition to Defendants' motion—the Court finds no basis on the current record to order jurisdictional discovery.

Having resolved these initial matters, the Court turns to the issue of whether Plaintiff has standing as to each of the claims asserted in the amended complaint.  *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, ___ U.S. ___, 137 S. Ct. 1645, 1650 (2017) ("Standing is not dispensed in gross.  To the contrary, a plaintiff must demonstrate standing for each

claim he seeks to press and for each form of relief that is sought." (citations and quotations omitted)).

### A. Breach of Contract Claim Against Wygal and Tortious Interference with Contract Claim Against Antmed

Plaintiff's first cause of action asserts a breach of contract by Wygal and its second cause of action asserts tortious interference with contract against Antmed. Specifically, Plaintiff alleges that Wygal breached the Employment Agreement by "(i) delaying one or more renewals of Coeur's expired or expiring contracts while still employed by Coeur to solicit such business at Antmed; (ii) directly and/or indirectly soliciting and servicing customers belonging to Coeur for his personal benefit and for the benefit of Antmed; and (iii) taking and using Coeur's Confidential Information (as defined by the Agreement) and trade secrets for his own benefit and for the benefit of Antmed." (Dkt. 9 at ¶ 52). Plaintiff further contends that Antmed "intentionally induced, condoned, and supported Wygal's breaches of his contractual obligations to Coeur, including: (i) Wygal's use of Coeur's confidential information and trade secrets for Antmed's benefit; (ii) supporting Wygal to directly or indirectly solicit Coeur's business; and (iii) supporting Wygal to service for Antmed the business that he serviced while employed at Coeur." (*Id*. at ¶ 59). Defendants contend that because Wygal's employment with Coeur terminated in 2012, "Coeur's claims based upon the Employment Agreement fail . . . because (while not conceding its enforceability) the terms of the Employment Agreement only imposed restrictions for two years after Mr. Wygal left Coeur's employment in 2012." (Dkt. 62-5 at 16-17).

The Court is not persuaded by Defendants' standing argument as to Plaintiff's breach of contract claim. It is true that a subsidiary generally lacks standing to sue on behalf of its parent corporation. *See In re Beck Indus., Inc.*, 479 F.2d 410, 418 (2d Cir. 1973). However, Plaintiff is not trying to assert contractual rights owned by ITW. To the contrary, it is undisputed that ITW was not a signatory to the Employment Agreement and that Wygal never had a written employment agreement with ITW. (*See* Dkt. 62-2 at ¶ 5).

Defendants' argument is thus not one of standing at all—instead, it is a merits-based argument that the Employment Agreement does not cover conduct occurring in 2020. In addition to not properly being the subject of a Rule 12(b)(1) motion, *see London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999), this contention by Defendants also fails on the merits at this stage of the proceedings, at least to the extent that the contract-related claims are based on alleged misuse of Plaintiff's trade secrets. While Defendants contend that "the terms of the Employment Agreement only imposed restrictions for two years after Mr. Wygal left Coeur's employment in 2012" (Dkt. 62-5 at 16-17), the language of the Employment Agreement, as recited in the amended complaint, is broader with respect to the use or dissemination of Plaintiff's trade secrets. More specifically, the amended complaint asserts that Wygal agreed in the Employment Agreement not to use or disseminate any of Plaintiff's trade secrets "during the course of [his] employment and for any time thereafter[.]" (Dkt. 9 at ¶ 18). Accordingly, even accepting that Wygal ceased to be an employee of Plaintiff in 2012, his contractual obligation not to use or disseminate Plaintiff's trade secrets continued in perpetuity. The Court finds no basis to dismiss the

breach of contract claim against Wygal or the tortious interference with contract claim against Antmed pursuant to Rule 12(b)(1).

### B. Misappropriation of Trade Secrets

Plaintiff's third cause of action alleges misappropriation of trade secrets by Defendants[3]. Because the amended complaint does not specify whether this claim is asserted pursuant to New York common law[4] or the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.* (the "DTSA"), the Court considers the viability of both a federal and a state misappropriation of trade secrets claim.

"To state a claim for misappropriation under the DTSA, a plaintiff must allege that it possessed a trade secret that the defendant misappropriated." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1836(b)(1)). "Misappropriation" is defined under the DTSA to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," 18 U.S.C. § 1839(5), and "improper means" is defined to include

---

[3] Plaintiff's third cause of action more specifically alleges "Misappropriation of Confidential Information and Trade Secrets against Defendants[.]" (Dkt. 9 at 12). However, "[i]n New York, to prevail on a claim for the misappropriation of confidential or proprietary information, a party must demonstrate: (1) that the information constituted a trade secret, and (2) that the defendant used that trade secret (3) in breach of an agreement, a confidential relationship or duty, or as a result of discovery by improper means." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 675 F. Supp. 2d 274, 279 (E.D.N.Y. 2009) (quotation omitted). Similarly, the DTSA's protection extends only to trade secrets and not merely confidential information, and so Plaintiff's third cause of action rises or falls on the viability of the misappropriation of trade secrets assertion.

[4] The Court applies New York law in this diversity action. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

"theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," *id*. § 1839(6)(A).

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009).

Under the DTSA, a trade secret includes "all forms and types of information that derives independent economic value from not being generally known and that the owner of which took reasonable measures to keep secret." *AUA Private Equity Partners, LLC v. Soto*, No. 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quotation and alterations omitted). Similarly, New York law defines a trade secret as "any pattern, formula, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *7 (S.D.N.Y. Dec. 5, 2016) (citation and quotations omitted).

Here, Defendants' standing argument as to the misappropriation claim appears to be that the trade secrets identified in the amended complaint as having been misappropriated by Defendants belonged to ITW and not Couer.[5] However, there is no basis for such a conclusion on the record before the Court. To the contrary, the amended

---

[5] Whether or not such trade secrets have been pled with the necessary specificity is an issue distinct from standing and is addressed later in this Decision and Order.

complaint expressly alleges that the files taken by Wygal belonged to Couer. (*See* Dkt. 9 at ¶ 66). Defendants have not submitted any extrinsic evidence to dispute this claim, *see Aikens*, 716 F. App'x at 39 ("As to any issue beyond the scope of [the moving party's extrinsic] evidence, we accept [the plaintiff's] allegations as true and draw all reasonable inferences in [its] favor."), and it is certainly plausible that an employee of a parent corporation would have access to a subsidiary's trade secrets. In other words, the fact that Wygal was employed by ITW, and accessed Plaintiff's trade secrets as a result of that employment, does not change the allegation that the trade secrets belong to Plaintiff and Plaintiff is the appropriate party to sue for their alleged misappropriation. *See Bos. Sci. Corp. v. BioCardia, Inc.*, No. 19-CV-05645-VC, 2021 WL 927267, at *3 (N.D. Cal. Mar. 11, 2021) (finding parent company had Article III standing to assert misappropriation of its own trade secrets by defendant whose relationship was with its wholly owned subsidiary); *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 707 (N.D. Ill. 2014) (same). Again, there is no basis for dismissal of this claim under Rule 12(b)(1).

### C. Claim for Breach of Fiduciary Duty and Faithless Servant Against Wygal

Plaintiff's fourth cause of action asserts that Wygal breached his fiduciary duties to Plaintiff and was a faithless servant. "A claim for breach of fiduciary duty must allege both the existence of a duty based on a relationship of trust and confidence and breach of that duty." *Gortat v. Capala Bros., Inc.*, 585 F. Supp. 2d 372, 376 (E.D.N.Y. 2008), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). "New York law establishes that an employee-employer relationship is fiduciary." *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 584 F. Supp. 2d 479,

485 (E.D.N.Y. 2008). The alleged employment relationship between Wygal and Coeur serves as the basis for Plaintiff's claim that Wygal owed it fiduciary duties. (Dkt. 9 at ¶ 71). Yet, for purposes of the Rule 12(b)(1) motions, the Court has found that Wygal's employment with Couer terminated in 2012—long before the alleged fiduciary breaches.

As a result, the Court agrees with Defendants that Plaintiff's breach of fiduciary duty claim must be dismissed for lack of standing. At the time of the alleged misconduct, Wygal was an employee of ITW and thus any fiduciary duty he owed was to ITW and not to Plaintiff. Plaintiff has no standing to assert this claim on behalf of its parent corporation. *See Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) ("A corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf."); *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 832 (S.D.N.Y. 1996) ("the officers and directors of a parent company owe allegiance only to that company and not to a wholly owned subsidiary"), *aff'd*, 110 F.3d 892 (2d Cir. 1997). The Court accordingly grants Defendants' motions to dismiss as to this claim. The dismissal is without prejudice. *See Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 54 (2d Cir. 2016) ("where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice").

D. **Claim Against Wygal for Indemnification/Attorneys' Fees and Costs**

Plaintiff's fifth cause of action is for attorneys' fees and costs against Wygal. This claim is based entirely on the Employment Agreement, which provides that "[i]f the

Company is the prevailing party in any legal proceeding to construe, apply, interpret, enforce or defend any of Employer's rights in this Agreement, [Wygal] agree[s] to reimburse the Company for all reasonable costs, expenses and attorney's fees incurred by the Company in such proceeding." (Dkt. 9 at ¶ 77). Thus, because this cause of action is intertwined with the breach of contract claim, for the same reasons that the breach of contract claim is not subject to dismissal for lack of standing, the fifth cause of action is also not subject to dismissal for lack of standing.

E. **Claim for Temporary, Preliminary, and Permanent Injunctive Relief**

Plaintiff's sixth cause of action is for "Temporary, Preliminary, and Permanent Injunctive Relief Against Defendants." (Dkt. 9 at 14). This is not properly a "cause of action" at all. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) ("Injunction is not a separate cause of action; it is a remedy."). The availability of such remedy depends on the ultimate outcome of Plaintiff's substantive causes of action. Because the Court finds that Plaintiff has standing to proceed as to certain causes of action, it also finds that Plaintiff has standing to pursue injunctive relief, to the extent such a remedy is available.

II. **Defendants' Rule 12(b)(6) Motions**

The Court turns next to Defendants' Rule 12(b)(6) motions, which are addressed to the adequacy of Plaintiff's claims for misappropriation of trade secrets and his tortious interference with contract claim against Antmed. As an initial matter, the Court rejects Plaintiff's argument that Defendants have waived their right to move for dismissal under Rule 12(b)(6). (*See* Dkt. 70 at 14-15). Plaintiff notes that Defendants failed to file their

motions within the time frame set forth in Federal Rule of Civil Procedure 12(a)(1)(A)(i) and did not seek an extension of such time until many months after those deadlines had expired, contending that "[g]iven Defendants' extraordinary and neglectful delays in seeking an extension or stay of their time to file responsive pleadings, the Court should deem the portions of their applications under Rule 12(b)(6) as waived." (Dkt. 70 at 15).

Plaintiff has cited no authority for its contention that a delay in seeking an extension of time to answer or otherwise respond to a complaint constitutes a waiver of the right to seek dismissal for failure to state a claim. Moreover, as Plaintiff acknowledges, during the time period at issue, the parties were actively engaged in settlement discussions. (Dkt. 70 at 14-15). On this record, the Court does not find any basis to deem Defendants' arguments waived. The Court accordingly turns to the merits of Defendants' Rule 12(b)(6) motions.

### A. Legal Standard on Rule 12(b)(6) Motion

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

### B.     Misappropriation of Trade Secrets Claim

Defendants argue that Plaintiff has failed to allege its trade secrets with sufficient specificity. The Court disagrees. The Second Circuit has never "expressly required trade secrets to be identified with any particular degree of specificity" in a pleading, and while courts in this Circuit have held that "a vague and indefinite piece of information cannot be protected as a trade secret," *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (quotation omitted); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) ("Although the Second Circuit has not articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated."), the complaint here contains sufficient detail so as to satisfy this threshold. In particular, Plaintiff has alleged that its trade secrets consisted of: a "lengthy

and detailed spreadsheet containing Coeur's client contact and order information"; "detailed pricing information regarding Coeur's full line of branded products"; "a distributor's inquiry and information about an expiring contract with Coeur"; and "screenshots of documents containing Coeur's client contact information." (Dkt. 9 at ¶¶ 38-41). These are not mere general categories of information as Defendants argue; Plaintiff has identified the specific documents it claims constitute trade secrets and the dates on which Wygal allegedly emailed them to his personal account. (*Id.*). This is more than adequate to put Defendants on notice of what they are alleged to have misappropriated.

Defendants' specific arguments about whether the documents identified by Plaintiff actually constitute trade secrets are not appropriate for resolution at this stage of the proceedings. Indeed, Wygal's arguments depend on the statements he makes in his sworn declaration (*see* Dkt. 62-5 at 22), which the Court cannot consider on a Rule 12(b)(6) motion. Drawing all inferences in Plaintiff's favor, as it must, the Court finds it plausible that the documents identified by Plaintiff could contain trade secrets. *See Pictometry Int'l Corp. v. Air Am. Flight Ctr., LLC*, 394 F. Supp. 3d 320, 333 (W.D.N.Y. 2019) (declining to determine, at motion to dismiss stage, whether specific information identified by the plaintiff constituted a trade secret or was merely general "know how"). The Court accordingly denies Defendants' request for dismissal of the misappropriation of trade secrets claim.

    C.    **Tortious Interference with Contract Claim**

Finally, the Court considers whether Plaintiff has adequately alleged a tortious interference with contract claim against Antmed. "Under New York law, the elements of

a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996).

Here, Antmed argued in its opening brief that the tortious interference claim should be dismissed because "it is predicated upon and has no existence without an enforceable contract as to which Plaintiff plausibly alleges Antmed interfered" and "Plaintiff solely relies upon the long-since terminated 2007 employment agreement, which could not have imposed any enforceable restrictions upon Mr. Wygal beyond 2014." (Dkt. 62-3 at 3-4). This argument fails because, at a minimum and as discussed above, the Employment Agreement's restriction on the use and dissemination of Plaintiff's trade secrets did not have a two-year post-termination expiration.

Antmed raises a new argument in its reply, contending that the amended complaint "fails to set forth any facts supporting Antmed's improper conduct" and that Plaintiff's allegations are conclusory. (Dkt. 72-4 at 12-13). However, courts in this Circuit generally will not consider arguments set forth for the first time in reply papers. *See Stoeckley v. Cty. of Nassau*, No. CV15514 LDW AKT, 2015 WL 8484431, at *1 (E.D.N.Y. Dec. 9, 2015) ("[I]t is the law of the Second Circuit that courts are not to consider arguments raised for the first time in a reply."). Antmed could and should have raised this argument in its opening brief, thereby affording Plaintiff an opportunity to respond. Because it did not do so, the Court does not consider this argument. Accordingly, the Court will not dismiss Plaintiff's tortious interference with contract claim.

## III.   Motion to Stay Discovery

The Court turns finally to Antmed's motion to stay discovery. Antmed has asked the Court to stay discovery pending its resolution of the pending motions to dismiss. (Dkt. 73 at 1). However, because the Court has now resolved Defendants' motions, the relief requested by Antmed is no longer available. The Court accordingly denies Antmed's motion to stay discovery as moot.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants Wygal's motion to dismiss (Dkt. 62) to the extent that it dismisses Plaintiff's claim for breach of fiduciary duty without prejudice for lack of subject matter jurisdiction and otherwise denies Wygal's motion to dismiss; (2) denies Antmed's motion to dismiss (Dkt. 63); and (3) denies Antmed's motion to stay discovery (Dkt. 73) as moot.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     September 16, 2021
           Rochester, New York